1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

JAMES CORGAN,                                    3:14-cv-00692-RCJ-WGC

7

Plaintiff,    **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

8

v.

9

NEVADA DEPARTMENT OF PUBLIC
SAFETY INVESTIGATION DIVISION, et. al.,

10

11

Defendants.

12

This Report and Recommendation is made to the Honorable Robert C. Jones, United

13

States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14

28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is a

15

Motion to Dismiss filed by defendants Detective Mike Keema, Elko County Sheriff Jim Pitts,

16

Elko County Undersheriff Clair Morris, Deputy in Charge of Jail Mike Silva, Elko County

17

Deputy Sheriffs and Jailers, Elko County, Elko County Commissioners Glen Gutry, Charlie

18

Myers, Deemar Dahl, Jeff Williams, and Warren Russel.  (Doc. # 8.)[1] These Defendants also

19

filed an errata to their motion. (Doc. # 10.)[2] Plaintiff filed an opposition (Doc. # 16) and

20

supplemental response (Doc. # 17), and the moving Defendants filed a reply (Doc. # 22). The

21

motion and reply were joined by defendants Nevada Department of Public Safety Investigation

22

Division[3], Brad Warwick, and Kelly Stuehling. (Doc. # 31.)

23

24

[1] Refers to court's docket number.

25

26

[2] The errata states that the motion erroneously included Sergeant Kelly Stuehling as a moving party, and clarifies that Sgt. Stuehling is an employee of the State and is not represented by counsel for the county defendants. (Doc. # 10.) A joinder to the motion to dismiss and reply of the county defendants has been filed by the Attorney General's Office on Stuehling's behalf. (Doc. # 31.)

27

28

[3] The court subsequently granted Nevada Department of Public Safety Investigation Division's motion to quash service (Doc. # 36); therefore, it is not a party at this time.

1    After a thorough review, the court recommends that the motion be granted in part and

2    denied in part.

3    <center>**I. BACKGROUND**</center>

4    **A. Status of Parties and Summary of Allegations**

5    Plaintiff, who is represented by counsel, filed his complaint on December 31, 2014.

6    (Compl., Doc. # 1, Exhibits to Compl. at Doc. # 2.) The events giving rise to this action took

7    place while Plaintiff was in custody at the Elko County Jail. He is currently an inmate in the

8    custody of the Nevada Department of Corrections (NDOC). He named the following defendants:

9    Nevada Department of Public Safety Investigation Division (DPS) (which has not been properly

10   served with the summons and complaint); Detective Brad Warwick; Detective Mike Keema;

11   Sergeant Kelly Stuehling; Elko County Sheriff Jim Pitts; Elko County Undersheriff Clair Morris;

12   Deputy in Charge of Jail Mike Silva; Elko County Deputy Sheriffs and Jailers; County of Elko;

13   Elko County Commissioners Glen Guttry, Charlie Myers, Deemar Dahl, Jeff Williams, Warren

14   Russell; and inmates Servando Munoz Cortez (aka Servando Munoz Cortez), Bryan Paige,

15   Francisca Baustista Villano, and John/Jane Does 1-10.

16   The court granted DPS's motion to quash service (Doc. # 36); therefore, DPS is not a

17   party defendant at this time. The court granted Plaintiff's motion to serve Cortez via publication,

18   but denied that motion as to Villano. (Doc. # 15.) It is not clear whether Plaintiff has effectuated

19   Cortez's service by publication. A notice of intent to dismiss Villano pursuant to Federal Rule of

20   Civil Procedure 4(m) was issued on May 21, 2015. (Doc. # 38.) Plaintiff has until June 20, 2015,

21   to serve Villano or show good cause as to why the deadline for service should be extended. In

22   addition, the court set aside the Clerk's entry of default as to Paige and he has filed an answer.

23   (Docs. # 29, # 37.) All remaining defendants appear to have been served and have filed a

24   responsive pleading.[4]

25   The court agrees with Defendants' characterization of the complaint as wandering, as

26   well as vague and confusing; nevertheless, the court provides the following summary insofar as

27

28   _____

[4] Summonses were issued to Warwick and Stuehling (Doc. # 33), and the return has not yet been filed, but Warwick and Stuehling have filed a joinder in the pending motion to dismiss. A second summons was issued as to DPS, but it does not appear Plaintiff has yet accomplished proper service as to DPS.

<center>- 2 -</center>

the court understands Plaintiff's allegations: Plaintiff was held in the Elko County Jail "in various capacities," including as a criminal defendant with respect to alleged non-violent controlled substances charges from July 2012 forward. (Doc. # 1 at 2 ¶¶ 1-2.) He appears to have been involved in activity involving controlled substances with Cortez and Villano. (*Id.* at 6 ¶¶ 19-20, 7 ¶ 23, 11 ¶ 7, 12 ¶ 9.)

Plaintiff alleges that Detectives Keema and Warwick interviewed him at the jail in July 2012, in the presence of his then criminal attorney, and "struck a deal" with him to become a confidential informant. (Doc. # 1 at 2 ¶ 5, 12 ¶¶ 2-3, 13 ¶ 5.) He claims that he was assured by Keema and Warwick that if he cooperated as an informant his identity would be held in strict confidence. (*Id.* at 13 ¶ 4.)

Based on information obtained from Plaintiff, DPS obtained a search warrant for Villano's residence, and Villano's residence was raided by DPS on August 10, 2012. (Doc. # 1 at 7 ¶ 25, 15 ¶ 13.) The affidavit in support of the search warrant identified Plaintiff as the source of the information leading to the issuance of the warrant related to Cortez's drug activities. (*Id.* at 7 ¶ 27, 13-14 ¶ 8.) Plaintiff claims that DPS intentionally left the search warrant and affidavit supporting its issuance on Villano's table, breaching the agreement to hold Plaintiff's identity in confidence. (*Id.* at 7 ¶ 28, 14 ¶ 10, 15 ¶ 14.) Plaintiff avers that Villano does not speak English and so she contacted William Corgan (Plaintiff's brother) to translate the documents, which he did. (*Id.* ¶¶ 26-27, 15 ¶¶ 16-17.) Villano subsequently reported the contents of the documents, including Plaintiff's identity as the confidential informant and Plaintiff's implication of Cortez and/or Villano in the drug scheme, to Cortez. (*Id.* at 7 ¶¶ 26-27, 14 ¶ 11, 15 ¶ 15.) Plaintiff mentions that Villano is the maternal grandmother of William Corgan's two infant minor children. (*Id.* at 8 ¶ 29.) The search led to Cortez's arrest. (*Id.* at 15 ¶ 13.)

Plaintiff contends that Sheriff Pitts, Undersheriff Morris, Deputy Silva and other jailers allowed Plaintiff and Cortez to be placed in the same cell on August 12, 2012, which resulted in Cortez severely beating Plaintiff. (*Id.* at 14-15 ¶ 12, 16 ¶¶ 19-20, 21 ¶ 44.) He claims that DPS took no steps to ensure segregation of Cortez from Plaintiff, and that Sheriff Pitts and/or his

1   deputies knew or should have known that placing Plaintiff in the same cell block as Cortez

2   would result in injury to Plaintiff. (*Id*. at 20 ¶ 42.)

3        At some point, Cortez allegedly directed Paige (whose connection to Plaintiff, Cortez, or

4   the drug scheme is not described) to shoot Plaintiff, and Paige did shoot Plaintiff on January 2,

5   2013. (Doc. # 1 at 6-7 ¶ 22, 9 ¶ 5, 18 ¶ 28.) Paige was eventually convicted of battery with a

6   deadly weapon arising from this incident. (*Id.,* 12 ¶ 8.) Plaintiff claims that Sergeant Stuehling

7   participated in a cover-up after Plaintiff's shooting, in an effort to buy Plaintiff off with housing

8   and cash in recognition of DPS's conduct which he contends led to Plaintiff's shooting by Paige.

9   (*Id.* at 8 ¶ 30.) Plaintiff also alleges that he was subsequently placed in the same cell block as

10   Paige, which caused him to be unable to sleep and to fear for his life for three days until his

11   mother was able to contact his attorney who contacted the authorities and Plaintiff was promptly

12   removed from the proximity of Paige. (*Id.* at 16-17 ¶¶ 22-23.)

13        Plaintiff states that he is bringing this action pursuant to 42 U.S.C. § 1983 and § 1988 to

14   redress violations of the Fourth, Eighth and Fourteenth Amendments, as well as pursuant to State

15   common law. (Doc. # 1 at 9 ¶¶ 1, 3, 4.)

16        He alleges that Elko County exists under the laws of the State of Nevada, and is

17   responsible for the policies, practices and customs of its sheriff's department, as well as the

18   hiring, training, supervision, control and discipline of its deputy sheriffs, and is responsible for

19   the operations and practices of its jail facility. (*Id*. at 10 ¶ 2.) He claims that Elko County acts

20   through its policy making officials including Commissioners Guttry, Myers, Williams, Dahl and

21   Russell, the Sheriff, Undersheriff, and Assistant Sheriff of Elko's detention facility. (Doc. # 1 at

22   11 ¶ 4.)

23        Plaintiff avers that DPS is an agency of the State of Nevada and is responsible for the

24   policies, practices and customs of its agency as well as the hiring, training, supervision, control

25   and discipline of its agents, and employed detectives Keema and Warwick. (*Id*. at 10 ¶ 3.)

26        Plaintiff's complaint identifies the following causes of action based on these allegations:

27   (1) intentional infliction of emotional distress (IIED); (2) negligent infliction of emotional

28   distress (NIED); (3) negligence causing personal injury; (4) breach of contract; (5) breach of the

implied covenant of good faith and fair dealing; and (6) conspiracy to accomplish cover-up. (*Id.* at 12-33.) Plaintiff seeks to recover monetary damages, including punitive damages, injunctive relief and attorney's fees. (*Id.* at 9-10 ¶ 6.)

**B. Defendants' Argument**

First, the moving Defendants argue that while Plaintiff states that this action is brought pursuant to 42 U.S.C. § 1983: (1) the complaint is devoid of allegations regarding a civil rights violation; (2) it does not identify what conduct on the part of each defendant caused such a violation; and (3)  none of the claims for relief seek redress for a constitutional violation and only invoke State common law. (Doc. # 8 at 5-7.)

Second, the moving Defendants argue that Plaintiff's first three claims (IIED, NIED and negligence) are barred by the two-year statute of limitations applicable to both section 1983 and the State common law claims because they are based on events that took place in August 2012, and his lawsuit was not filed until December 31, 2014. (*Id.* at 7-8.)

Third, the moving Defendants contend that the NIED and negligence claims which are premised on the alleged negligent conduct of the defendants fail to state claims upon which relief may be granted because negligent conduct cannot support an actionable claim for relief under section 1983. (*Id.* at 8-9.)

Fourth, they argue that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing cannot support a claim under section 1983. (*Id.* at 9.)

Finally, the moving Defendants argue that Plaintiff's contract claims fail as a matter of law as State law claims because the contract was allegedly formed between the DPS detectives and Plaintiff and the county cannot be liable for breaching a contract to which it was not a party. (*Id.* at 10.)

**C. Plaintiff's Response**

In his response, Plaintiff asserts that this action is predicated on section 1983 and Nevada common law, and that his claims stem from the intentional disclosure and deliberate indifference in disclosing his identity as a confidential informant, as well as Defendants' failure to protect him when he was intentionally placed in several dangerous situations. (Doc. # 16 at 2.)

1  Plaintiff contends that his complaint contains ample facts to satisfy the notice pleading standard

2  in the federal courts. (*Id*. at 6-7.) Plaintiff argues that the complaint does in fact assert civil rights

3  violations including: (1) the failure to protect from Cortez's assault and the attempted murder by

4  Paige which he contends violated his substantive due process rights under the Fourteenth

5  Amendment; (2) that Defendants created a danger in violation of his substantive due process

6  rights under the Fourteenth Amendment; and (3) a *Monell* claim based on Elko County and the

7  Elko County Sheriff's Office's failure to adequately train its detectives and sheriffs. (*Id*. at 7-8.)

8  Plaintiff argues that he may maintain his claim against the municipal defendants under *Monell*

9  because he has sufficiently alleged a failure to supervise and train the offending individuals, and

10  a constitutional claim may arise from negligent training or supervision where it is sufficiently

11  inadequate to constitute deliberate indifference. (*Id*. at 13.) Plaintiff also contends that his civil

12  rights claims are not based on alleged negligent conduct, but deliberate indifference. (*Id*. at 14-

13  15.)

14      Insofar as Defendants' statute of limitations argument is concerned, Plaintiff maintains

15  that courts do not favor this defense. (Doc. # 16 at 2.) Plaintiff further contends that his State law

16  claims for IIED, NIED, and negligence are not time barred because they are not only based on

17  the attack by Cortez in August 2012, but also on Paige's attempt to kill Plaintiff on January 2,

18  2013, and the placement of Plaintiff in the same cell block as Paige. (*Id*. at 14.)

19      Finally, Plaintiff argues that he states cognizable claims for breach of contract and breach

20  of the covenant of good faith and fair dealing, and in addition these allegations give rise to a

21  constitutional claim under the Due Process Clause. (*Id*. at 15.) As to the parties to the contract,

22  Plaintiff states that Keema contracted with him and prepared the affidavit that revealed his

23  identity as the confidential informant, and that the complaint alleges DPS's investigation division

24  is a division of Elko County; therefore, he should be able to maintain the contract claims against

25  the county defendants. (*Id*. at 16.)

26  ///

27  ///

28

- 6 -

1   **II. LEGAL STANDARD-MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
2   **UPON WHICH RELIEF MAY BE GRANTED**

3      Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for
4   the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review
5   under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of*
6   *America*, 232 F.3d 719, 723 (9th Cir. 2000).

7      In addition, 28 U.S.C. § 1915A requires that the court "review, before docketing, if
8   feasible, or, in any event, as soon as practicable after docketing, a complaint in a civil action in
9   which a prisoner seeks redress from a governmental entity or officer or employee of a
10  governmental entity." 28 U.S.C. § 1915A(a). "[T]he court shall identify cognizable claims or
11  dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous,
12  malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief
13  from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court applies the
14  same standard as is utilized in connection with Federal Rule of Civil Procedure 12(b)(6) when
15  reviewing the adequacy of a complaint under section 1915A.  *See Resnick v. Hayes*, 213 F.3d
16  443, 447 (9th Cir.  2000) (citation omitted).

17     In reviewing the complaint under this standard, the court must accept as true the
18  allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976),
19  construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the
20  plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however,
21  to "legal conclusions." *Ashcroft v.  Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the
22  elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.
23  (citation omitted). "While legal conclusions can provide the framework for a complaint, they
24  must be supported by factual allegations." *Id*. at 679.

25     Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and
26  plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P.
27  8(a)(2).  The Supreme Court has found that at a minimum, a plaintiff should state "enough facts

28

1  to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

2  570 (2007); *see also Iqbal*, 556 U.S. at 678.

3       The complaint need not contain detailed factual allegations, but it must contain more than

4  a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also*

5  *Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief

6  above the speculative level." *Twombly*, 550 U.S. at 555. "The pleading must contain something

7  more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of

8  action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36

9  (3d ed. 2004)).

10      The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair

11  notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

12  (internal quotation marks and citation omitted). "A claim has facial plausibility when the

13  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

14  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

15  "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

16  (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a

17  context-specific task that requires the reviewing court to draw on its judicial experience and

18  common sense." *Id*. at 679 (citation omitted). Allegations can be deemed "implausible" if there

19  are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

20      A dismissal should not be without leave to amend unless it is clear from the face of the

21  complaint that the action is frivolous and could not be amended to state a federal claim, or the

22  district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d

23  1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th

24  Cir. 1990).

25  ///

26  ///

27  ///

28  ///

- 8 -

# III. DISCUSSION

**A. Timing of Response; Filing of Supplemental Response**

Defendants filed their motion to dismiss on January 22, 2015. (Doc. # 8.) Plaintiff requested, pursuant to the stipulation of the parties, an extension of time to respond to the motion, which the court granted. (Docs. # 12, # 13, # 14.) The stipulation provided that Plaintiff should have up to and including **March 2, 2015**, to file his response to Defendants' motion. (Doc. # 12 at 2.) Plaintiff filed his response to Defendants' motion on March 3, 2015, one day late. (Doc. # 16.) The court will consider Plaintiff's late response on this occasion, but Plaintiff is cautioned that this courtesy will not be extended to future late filings.

The Local Rules of the District of Nevada provide for the filing of a motion, response and reply brief. LR 7-2(a)-(c). The Local Rules do not contemplate the filing of a supplemental response or sur-reply. Plaintiff filed a supplemental response to Defendants' motion without seeking leave of court, and the supplemental response was filed beyond the extended deadline Plaintiff was given to file his response to the motion. (*See* Doc. # 17.) Plaintiff is represented by counsel, who should be readily familiar with the Local Rules regarding motion practice. Plaintiff and his counsel are required to abide by the Local Rules. The court will consider Plaintiff's supplemental brief on this occasion, because it does not want to revisit the issue of whether or not the alleged breach of the confidential informant agreement gives rise to a property interest entitled to the protections of the Due Process Clause. The court points out, however, that  this issue was apparent from Defendants' motion and at least partially addressed in Plaintiff's original response. Plaintiff may not take it upon himself to extend the time to file a response to a motion or to submit supplemental briefing, and should have sought leave of court before filing the supplement.

**B. Section 1983 Civil Rights Claims**

**1. Possible Civil Rights Claims**

The court will first assess whether Plaintiff states any colorable civil rights claims under section 1983. Plaintiff's complaint begins with the heading "General Allegations" which is followed six pages of paragraphs identifying and describing the defendants, with some

interspersed factual allegations. (Doc. # 1 at 2-8.) After this is the heading "Preliminary Statement," which includes in its first paragraph a statement that this action is brought "against all Defendants pursuant to 42 U.S.C. § § 1983 and  1988, to redress the deprivation under color of law of Plaintiff's rights, privileges, and immunities secured by the Constitution of the United States." (Doc. # 1 at 9 ¶ 1.) In the third paragraph under this heading, Plaintiff also states: "This action is brought pursuant to 42 U.S.C. § 1983 and 1988 to redress the deprivation of past and present violations of the fourth, eighth, and fourteenth amendments to the Constitution of the United States." (Doc. # 1 at 9 ¶ 3.) Plaintiff also states that he is bringing "this action against the Defendants under the common law of Nevada to redress the multiple assaults and batteries upon Plaintiff CORGAN, and including CORGAN as victim of the attempted murder of him by BRYAN PAIGE on or around January 2, 2013." (*Id.* ¶ 4.) These statements are followed by some brief factual allegations relative to Paige allegedly shooting Plaintiff and Paige's subsequent conviction. (*Id.* ¶¶ 4-5.) Then, under the heading "Parties," Plaintiff once again identifies the parties. (Doc. # 1 at 10-12.) The Complaint then sets forth six causes of action, each of which is labeled as a State tort or contract claim.  (Doc. # 1 at 12-32.) The majority of the factual allegations are set forth under the heading of the first cause of action for IIED. (*See id.* at 12-22.)

Defendants argue that Plaintiff never specifically alleges how his civil rights were violated, what conduct on the part of Defendants caused such a violation, and that Plaintiff fails to include allegations to support a claim for municipal liability against Elko County and the Elko County Sheriff's Office under *Monell*. (Doc. # 8 at 5-6.) Plaintiff, on the other hand, contends that his allegations are sufficient and he should not be subject to any heightened pleading standard. (Doc. # 16 at 6-7.)

First, it is axiomatic that Plaintiff must allege facts sufficient to give Defendants fair notice of his claims and the grounds upon which they rest.  If Plaintiff intended to bring claims that his civil rights were violated under section 1983, it seems only logical that he would have labeled his claims under the specific amendment to the Constitution that he claims was violated. He did not; nevertheless, the court has reviewed all of the allegations of the complaint, regardless

of the label Plaintiff has given them, to determine whether the allegations, when construed together, state any plausible claim for relief under section 1983. To state a claim for relief under section 1983, a Plaintiff must allege that defendants, acting under color of state law, deprived him of rights secured by the Constitution or federal statute. *See Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

While none of these are specifically spelled out in the complaint, in his opposition to Defendants' motion, Plaintiff states that he is asserting the following civil rights claims: (1) a failure to protect claim related to the alleged assault by Cortez and the alleged shooting by Paige in violation of his substantive due process rights under the Fourteenth Amendment; (2) a claim that Defendants created a danger in violation of Plaintiff's substantive due process rights under the Fourteenth Amendment; and (3) claim that by failing to train adequately its detectives and sheriffs to prevent such constitutional violations, the County of Elko and Elko County Sheriff's Office are liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Doc. # 16 at 7:19-20, 8:1-6.)

The court finds that Plaintiff has adequately alleged that the conduct of Defendants was undertaken under color of State law. The question, however, is whether he has adequately alleged a deprivation of rights secured by the Constitution or federal statute.

Plaintiff references his rights under the substantive and due process clauses of the Fourteenth Amendment. Plaintiff's clarifies that his purported civil rights claims derive from the allegations that Defendants placed him in a cell block with Cortez which led to the alleged assault and battery by Cortez; that Plaintiff was shot by Paige; and that he was subsequently placed in the same cell block as Paige resulting in his suffering from emotional distress until he was removed from Paige's proximity. Plaintiff alleges that he was a pretrial detainee at the time these events took place (or at least when he was placed in the cell blocks with Cortez and then Paige; it is unclear where he was when Paige shot him). The Ninth Circuit has recently stated that a pretrial detainee's "right to be free from violence at the hands of other inmates arises from the Fourth Amendment." *Castro v. County of Los Angeles,* 785 F.3d 336, 345 (9th Cir. 2015)

1    (citing *Pierce v. Multnomah County,* 76 F.3d 1032, 1042-43 (9th Cir. 1996)).[5] Nevertheless,

2    courts borrow from the Eighth Amendment when analyzing alleged constitutional deprivations

3    by pretrial detainees. *See id.* (citing *Clouthier v. County of Contra Costa,* 591 F.3d 1232, 1241

4    (9th Cir. 2010)).

5            Jail officials must "'take reasonable measures to guarantee the safety of inmates.'"

6    *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 486 U.S. 517, 526-27

7    (1984)); *see also Castro,* 785 F.3d at 345-46. To establish a constitutional violation based on the

8    failure to prevent harm, Plaintiff must demonstrate that conditions in the jail posed "a substantial

9    risk of serious harm" and that Defendants were "deliberately indifferent" to his safety. *Farmer v.*

10   *Brennan*, 511 U.S. 825, 834 (1994); *Castro*, 785 F.3d at 345-46. "A defendant is deemed

11   'deliberately indifferent' to a substantial risk of serious harm when he knew of the risk but

12   disregarded it by failing to take reasonable measures to address the danger." *Castro*, 785 F.3d at

13   346.

14           The court will also address below Plaintiff's argument that he states a civil rights claim

15   under the Due Process Clause of the Fourteenth Amendment based on the averment that the

16   confidential informant agreement he entered into was allegedly breached.

17           **2. Failure to Protect Claim-August 12, 2012 Placement in Cell Block with Cortez**

18           Insofar as Plaintiff asserts a failure to protect claim predicated on the alleged August 12,

19   2012 placement of Plaintiff in the same cell as Cortez, even assuming that Plaintiff does state a

20   colorable constitutional claim for failure to protect, the court finds this claim is barred by the

21   statute of limitations.

22           Section 1983 does not contain its own statute of limitations so federal courts borrow the

23   statute of limitations for section 1983 claims applicable to personal injury claims in the forum

24   ───────────────

25           [5] *Castro* relies on *Pierce*, which concluded that "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause of arrest." *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996). It is not exactly clear whether during the time period at issue Plaintiff was being held prior to arraignment. This distinction is not significant, because even if Plaintiff were being legally held upon a finding of probable cause, the Ninth Circuit has confirmed that the Fourteenth Amendment's Due Process Clause protects pretrial detainees at this stage from conditions that amount to punishment, but courts still borrow from Eighth Amendment jurisprudence in analyzing a claim based on failure to prevent harm. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241-42 (9th Cir. 2010).

1   state. *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573

2   (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and therefore

3   section 1983 claims brought here, is two years. Nev. Rev. Stat. 11.190(4)(e); *Perez v. Seevers*,

4   869 F.2d 425, 426 (9th Cir. 1989). The statute of limitations begins to run on the date when the

5   plaintiff's claim accrues, which is determined by federal law. *Pouncil*, 704 F.3d at 573. A claim

6   accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the

7   action." *Id*. at 574 (citation omitted).

8        Here, Plaintiff's claim for failure to protect related to his placement in a cell block with

9   Cortez accrued when Cortez attacked Plaintiff, which allegedly occurred on August 12, 2012.

10   Plaintiff did not file this action until December 31, 2014, more than two years after the claim

11   accrued. Therefore, this claim must be dismissed with prejudice.

12        **3. Failure to Protect Claim-Shooting by Paige and Placement in Cell Block With**

13   **Paige**

14        Insofar as Plaintiff attempts to assert a civil rights claim predicated on the allegations that

15   Paige shot Plaintiff on January 2, 2013, and that Plaintiff was subsequently placed in the same

16   cell block as Paige, these claims are not time barred; however, the court finds that Plaintiff fails

17   to state a plausible claim for relief based on these allegations.

18        **a. Shooting By Paige**

19        First, as to the allegation that Paige shot Plaintiff, there are no facts indicating that any of

20   the State or Elko County defendants had knowledge of this risk to Plaintiff's safety.[6] Plaintiff

21   only alleges that Cortez directed Paige to shoot Plaintiff, and Paige carried this out on January 2,

22   2013. He does not allege where the shooting took place or any other factual details which would

23   allow the court to infer that the other defendants had any knowledge that would subject them to

24   liability under section 1983 for deliberate indifference to Plaintiff's safety. Accordingly, this

25   claim should be dismissed. It is not absolutely clear that Plaintiff cannot cure the noted

26   deficiencies with respect to this claim; therefore, the dismissal should be with leave to amend.

27

28        [6] Plaintiff cannot maintain a claim under section 1983 against Cortez related to the allegation that Paige
shot Plaintiff by virtue of the allegation that Cortez directed the shooting because Cortez was not acting under color
of State law.

### b. Placement in Cell Block with Paige

Second, with respect to the allegation that Plaintiff was subsequently placed in the same cell block as Paige, Plaintiff does not implicate any particular defendant or even allege how any defendant had knowledge of a risk to Plaintiff's safety posed by housing him in a cell block with Paige. Plaintiff alleges generally that Paige was convicted of battery with a deadly weapon stemming from this incident. The judgment of conviction Plaintiff includes as an exhibit to his complaint is dated December 12, 2013. (Doc. # 2 at 9-12.)  In his opposition, he appears to argue that this should have put Defendants on notice of the risk of harm posed by Paige; however, the complaint does not include any facts that any defendant knew of the Paige shooting at the time Plaintiff was purportedly placed in the same cell block as Paige. Therefore, this claim should be dismissed. It is not clear that the deficiencies cannot be cured by amendment; therefore, the dismissal should be with leave to amend.

Plaintiff's claim against Elko County and the Elko County Sheriff's Office on the basis of Plaintiff's placement in the cell block similarly fails. A claim against a municipality such as a county may proceed not on a theory of respondeat superior, but "only when an 'action [taken] pursuant to [an] official municipal policy of some nature' caused the violation." *Castro,* 785 F.3d at 350 (citing *Monell,* 436 U.S. at 691). Here, there are no allegations to satisfy the elements of the underlying claim of failure to protect, *i.e.*, that any defendant knew of and disregarded a risk to Plaintiff's safety, which is a predicate to a *Monell* claim against Elko County and the Elko County Sheriff's Office. Therefore, this claim should also be dismissed with leave to amend.

If Plaintiff chooses to amend his claims related to the shooting by Paige and placement in the same cell block as Paige, Plaintiff is advised that a claim of deliberate indifference (which is the basis for Plaintiff's civil rights claims) cannot be predicated on mere negligence. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Plaintiff must allege facts demonstrating that defendants knew of the risk of serious harm, and disregarded that risk. *See Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citation omitted). In other words, to the extent Plaintiff's complaint is only predicated on Defendants' negligent conduct in placing Plaintiff in a cell with Paige, this is insufficient to maintain a claim of deliberate

1    indifference. *See, e.g., Long v. County of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (failure to

2    train may serve as basis for liability when failure amounts to deliberate indifference). The court

3    will evaluate whether Plaintiff has overcome this hurdle if and when he files an amended

4    complaint.

5              **4. Confidential Informant Agreement**

6              Finally, the court will address whether Plaintiff states a civil rights due process claim

7    under section 1983 based on the alleged breach of the confidential informant agreement. The

8    court concludes Plaintiff cannot maintain a Fourteenth Amendment due process claim based on

9    the purported breach of the confidential informant agreement.

10             As a threshold matter, a plaintiff alleging a due process violation must demonstrate a

11   deprivation of a constitutionally protected liberty or property interest. *Dittman v. California,* 191

12   F.3d 1020, 1029 (9th Cir. 1999). Thus, the court is tasked with analyzing whether the allegation

13   that he entered into a confidential informant agreement that was breached gives rise to a property

14   interest under the Fourteenth Amendment's Due Process Clause.

15             In *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County*,

16   825 F.2d 1404 (9th Cir. 1987), a physicians' group sued the San Bernardino County Board of

17   Supervisors, "alleging that the County deprived the Group of its property interest in the contract

18   without due process of law" when it terminated a contract with the group to provide services to a

19   county medical facility. *Id.* at 1405-06. The Ninth Circuit was presented with the issue of

20   whether the physicians' group's "rights to performance on the contracts, as a supplier of services

21   to the government, were sufficient property interests to merit constitutional protection." *Id.* at

22   1407. If they were, then the court had to consider whether the physicians' group was denied due

23   process. *Id.* The court pointed out that "[t]he jurisdictional statute for section 1983 actions, 28

24   U.S.C. § 1343(3), makes no distinction between deprivation of personal liberties and proprietary

25   rights." *Id.* (citing *Lynch v. Household Finance Corp.*, 405 U.S. 538, 542 (1972)). The court then

26   discussed its prior holding in *Loehr v. Ventura County Community College District*, 743 F.2d

27   1310 (9th Cir. 1984). The court clarified that *Loehr* does not stand for the broad proposition that

28   contract rights alone can never give rise to a property interest protected by the Due Process

1    Clause. *Id*.  Instead, "contracts *may* create protected property interests." *Id*. at1407, 1407-08 ("it

2    has long been settled that a contract *can* create a constitutionally protected property interest")

3    (emphasis added) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "[P]roperty

4    interests 'are created and their dimensions are defined by existing rules or understandings that

5    stem from an independent source such as state law.'" *Id*. at 1408 (citing *Roth*, 408 U.S. at 577).

6    "[W]ritten contracts, as clear evidence of a formal understanding supporting a claim of

7    entitlement, can create protected property interests." *Id*. (citing *Perry v. Sindermann*, 408 U.S.

8    593, 601 (1972)). For example, where a contract has a provision that employment may only be

9    terminated "for cause," or provides for employment for a fixed term, a constitutionally protected

10   entitlement may arise. *Id*. (citations omitted). Nevertheless, the court has recognized that not

11   every contract gives rise to a property entitlement. *Id*. "It is neither workable nor within the

12   intent of section 1983 to convert every breach of contract claim against a state into a federal

13   claim." *Id*.

14        In *Loehr*, a school superintendent argued that he was deprived of due process when the

15   school district terminated his contract mid-term. *Loehr*, 743 F.2d at 1314. There, the court

16   interpreted the employment contract, and concluded that Loehr "contracted for no more than

17   California law automatically provides," *id.* at 1316, and "California had, by statute, restricted the

18   property interests of school administrators to the right to hold their original classroom teaching

19   positions." *San Bernardino*, 825 F.2d at 1407 (citing *Loehr*, 743 F.2d at 1314-16). As such, the

20   court concluded that Loehr did not have a property interest in continued employment and had no

21   due process rights. *Id*.

22        In *San Bernardino*, the court confronted the issue of "what kinds of contracts with the

23   state create rights that are protected by the Fourteenth Amendment." *Id*. at 1409. First, it

24   discussed that the "prime protected category" of employment contracts "which ha[ve] supplied

25   nearly all of the successful contract-based section 1983 actions." *Id*. The reasons given for

26   affording due process protection to employment contracts include: "the security with which [the

27   interest] is held under state law and its importance to the holder," with emphasis on "[t]he right

28   of an individual not to be deprived of employment that he or she has been guaranteed" which "is

1   more easily characterized as a civil right, meant to be protected by section 1983, than are many

2   other contractual rights." *Id*. at 1409.

3        In *San Bernardino*, the court distinguished the physicians' group's contract to provide

4   services from an individual employment contract, and concluded that the physicians' group's

5   contract did not give rise to an entitlement invoking the protections of the Due Process Clause.

6   *Id*. at 1409-10. While employment contracts are not the only kind that may be entitled to the Due

7   Process Clause's protections, the court cautioned that "the farther the purely contractual claim is

8   from an interest as central to the individual as employment, the more difficult it is to extend it

9   constitutional protection without subsuming the entire state law of public contracts." *Id*. Some

10   other recognized property interests were identified in *Logan v. Zimmerman Brush Co.*, 455 U.S.

11   422, 430-31 (1982), including: a horse trainer's license, utility service, disability benefits, a high

12   school education, government employment, a driver's license and welfare benefits.

13        While federal constitutional law does not create property interests, as those rights are

14   created by "existing rules or understandings that stem from an independent source such as state

15   law", *Roth,* 408 U.S. at 577, federal law determines whether the interest constitutes property

16   protected by the Fourteenth Amendment. *See, e.g., Brady v. Gebbie,* 859 F.2d 1543, 1548 n. 3

17   (9th Cir. 1988), *cert. denied,* 109 S.Ct. 1577 (1989). The alleged confidential informant contract

18   is not an employment contract. While contracts other those for an employment may give rise to a

19   constitutionally protected property interest, the court is aware of no case holding that a person

20   has a property interest giving rise to the Due Process Clause's protections arising from a

21   confidential informant agreement, and the court is not willing to recognize such an interest now.

22        Plaintiff analogizes his case to *Rivero v. City and County of San Francisco*, 316 F.2d 857

23   (9th Cir. 2002). Rivero signed a contract with the City and County of San Francisco to provide

24   funeral and mortuary services for their indigent dead. *Id*. at 860. The contract contained a

25   provision allowing the City to terminate the contract, without cause and for its convenience, on

26   thirty days' notice, which the City eventually did. *Id*. The question presented in *Rivero* was

27   whether the government officials were entitled to qualified immunity. *Id*. at 863. The court

28   discussed that it was established that "deliberate retaliation by state employees against an

1    individual for speaking out on matters of public concern, with the intent of depriving the speaker

2    of a valuable government contract, violated the First and Fourteenth Amendments." *Id*. As such

3    the court found that it was clearly established that "state employees could not cause the

4    termination of a two-year for profit government contract in retaliation for the contracting party's

5    exercise of his First Amendment rights to speak out on a matter of public concern." *Id*. at 864.

6    *Rivero* distinguished itself case from *San Bernardino* and highlighted that the physicians' group

7    in *San Bernardino* was not claiming violation of First Amendment rights, but a violation of

8    property rights under the Due Process Clause. *Id*. *Rivero* did not involve a claim that property

9    rights were violated. Therefore, *Rivero* is inapposite to *this* case as well.

10          In other cases, even where a property interest is found or assumed, courts have held that

11   there is no due process violation when state law affords an adequate remedy. In *Lujan v. G&G*

12   *Fire Sprinklers, Inc.*, 532 U.S. 189 (2001), the Supreme Court assumed without deciding that

13   G&G Sprinklers had a property interest when the state withheld money due under its contracts,

14   but nevertheless held that state law afforded it an adequate opportunity to pursue its claim in

15   state court and as such the state did not deprive G&G Sprinklers of its claim to payment without

16   due process. *Id*. at 195. In *DeBoer v. Pennington*, 287 F.3d 748 (9th Cir. 2002), the Ninth Circuit

17   similarly concluded that the common law remedy for breach of contract gave the DeBoers all

18   process they were due related to deprivation of their property interest by the city. *Id*. at 749-50.

19          This court has declined to extend property rights to Plaintiff's confidential informant

20   agreement; however, even if it did, Plaintiff's common law breach of contract claim provides

21   adequate process for Plaintiff's alleged deprivation. In other words, "the contract here has not

22   given rise to a greater interest than the contract itself[.]" *DeBoer*, 287 F.3d 748, 750 (9th Cir.

23   2002). Plaintiff argues that contractual remedies are "unavailable" in this case, and then cites

24   *Hadley v. Baxendale*, apparently arguing that the damages he seeks were not within the

25   contemplation of the parties at the time of the agreement. Plaintiff does not argue that he cannot

26   bring a breach of contract claim; he simply argues that he could not recover damages as he

27   admits that the harm he ultimately suffered (being beaten up by Cortez, shot by Paige and then

28   placed in a cell with Paige) was not foreseeable when the agreement was entered into. The court

1  finds Plaintiff's argument to be unavailing. As a result, this claim should be dismissed with

2  prejudice.

3      Insofar as Plaintiff attempts to state a *substantive* due process claim based on the

4  confidential informant allegations, his claim similarly fails as a liberty or property interest is a

5  prerequisite to a substantive due process claim as well. *See, e.g., Blaylock v. Schwinden,* 862

6  F.2d 1352, 1354 (9th Cir. 1988).

7      Therefore, Plaintiff's to the extent Plaintiff asserts procedural or substantive due process

8  claims based on the alleged confidential informant agreement, they should be dismissed with

9  prejudice.

10  **C. State Law claims**

11      **1. IIED, NIED and Negligence**

12      Plaintiff clarifies in his opposition that these claims are based not only on the alleged

13  attack by Cortez on Plaintiff in August 2012, but also on the allegations that Defendants placed

14  Plaintiff in the same cell block as Paige following Paige's shooting of Plaintiff. (Doc. # 16 at 14.)

15      **a. Statute of Limitations**

16      Consistent with the court's finding above, to the extent Plaintiff's IIED, NIED and

17  negligence claims are based on his August 2012 placement in the same cell block as Cortez, they

18  are barred by the statute of limitations. Nev. Rev. Stat. 11.190(4)(e).

19      The court will now analyze the sufficiency of the allegations to the extent they are based

20  on Plaintiff's placement in the same cell block as Paige following the alleged January 2, 2013

21  shooting of Plaintiff by Paige.

22      **b. Sufficiency of Allegations-IIED**

23      A plaintiff asserting a claim for IIED in Nevada, must allege: "(1) extreme and

24  outrageous conduct with either the intention of, or reckless disregard for, causing emotional

25  distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or

26  proximate causation." *Welder v. Univ. of S. Nevada*, 833 F.Supp.2d 1240, 1245 (D. Nev. 2011)

27  (quoting *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (Nev. 1999));

28  *see also Star v. Rabello*, 625 P.2d 90, 97 Nev. 124 (Nev. 1981). "[E]xtreme and outrageous

1  conduct is that which is outside all possible bounds of decency and is regarded as utterly

2  intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24,

3  26 (1998) (internal quotations omitted). "The court determines whether the defendant's conduct

4  may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable

5  people may differ, the jury [must determine] whether the conduct was extreme and outrageous."

6  *Chehade Refai v. Lazaro*, 614 F.Supp.2d 1103, 1121 (D. Nev. 2009).

7       As it stands, Plaintiff's complaint does not state a plausible claim for IIED related to the

8  alleged placement in a cell block with Paige against Defendants.  Plaintiff does not allege any

9  facts to satisfy the first or third elements of this claim. Plaintiff alleges he was shot by Paige, and

10  that Paige was eventually convicted of this shooting, and at some point he was placed in the

11  same cell block as Paige, but there are no allegations that any of the defendants knew about the

12  shooting or had any other reason to believe Plaintiff would suffer harm if placed in a cell block

13  with Paige so as to allege that the defendants intended to cause Plaintiff emotional distress or had

14  reckless disregard for causing him emotional distress or proximately caused such distress. It is

15  not clear at this point that Plaintiff cannot cure the noted deficiencies; therefore, this claim

16  should be dismissed with leave to amend.

17                    **c. Sufficiency of Allegations-NIED**

18       Under Nevada law, only a bystander witness to an accident can recover for a negligent

19  infliction of emotional distress claim. *See Myers-Desco v. Lowe's HIW, Inc.*, 484 Fed.Appx. 159

20  (9th Cir. 2012) (citing *Grotts v. Zahner*, 989 P.2d 415, 416, 115 Nev. 339 (Nev. 1999)). Nevada

21  law does not provide a cause of action for a plaintiff to allege direct infliction of emotional

22  distress from conduct that was merely negligent. *See id.; see also Garcia v. Nevada Property 1,*

23  *LLC*, No. 2:14-cv-1707 JCM-GWF, 2015 WL 67019 (D. Nev. Jan. 6, 2015) (citation omitted);

24  *Kennedy v. Carriage Cemetery Serv., Inc.*, 727 F.Supp.2d 925, 935 (D. Nev. 2010) ("A separate

25  claim of NIED typically lies only where the emotional harm is based on observance of a physical

26  injury to another, usually a close relative."); *Schoen v. Amerco, Inc.*, 896 P.2d 469, 477, 111

27  Nev. 735 (Nev. 1995) (victim-plaintiff may obtain damages for negligent infliction of emotional

28  distress through a cause of action for negligence).

#### d. Sufficiency of Allegations-Negligence

"A claim for negligence in Nevada requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175, 124 Nev. 213 (Nev. 2008).

The complaint alleges that Paige shot Plaintiff on January 2, 2013. It does not allege where this occurred or provide any other details regarding the shooting. (Doc. # 1 at 9 ¶¶ 4-5.) It certainly does not allege that the shooting took place within the jail, so as to potentially put the Defendants on notice of this act. Plaintiff avers that Paige was convicted on December 13, 2013, of battery with a deadly weapon as a result of this shooting, but there are no allegations plausibly suggesting that any of the Defendants knew of this conviction when Plaintiff was placed in the cell block with Paige. (Doc. # 1 at 6 ¶ 22, 9 ¶ 5.) While Plaintiff alleges that Cortez requested that Paige kill Plaintiff (*id.* at 9 ¶ 5), there are no factual allegations to suggest that any of the other defendants knew of this alleged plan. There are no allegations that any of the other Defendants had knowledge of any history between Plaintiff and Paige, including the shooting. In fact, Plaintiff alleges that once the Elko County Jail and/or Sheriff Pitts were notified of the situation, the deputies immediately removed Plaintiff from the dangerous circumstance (*id.* at 17 ¶ 24), indicating that the Defendants were not aware of any risk of harm to Plaintiff.

Insofar as DPS/NDI, Keema and Warwick are concerned, there are no factual allegations making it plausible that their alleged disclosure of Plaintiff's identity as the confidential informant was the legal cause of Paige shooting Plaintiff. There are no allegations that these defendants even knew of Paige.

In sum, to the extent Plaintiff asserts a negligence claims related to his being shot by Paige and subsequent placement in a cell block with Paige, they should be dismissed. The dismissal should be with leave to amend as it is not absolutely clear he cannot cure the noted deficiencies.

///

///

///

### 2. Breach of Contract & Breach of Covenant of Good Faith and Fair Dealing

A breach of contract claim in Nevada requires: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med Providers Fin. Corp. II v. New Life Centers, LLC.*¸ 818 F.Supp.2d 1271, 1274 (D. Nev. 2011).

A breach of the covenant of good faith and fair dealing arises "where the terms of the contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923, 107 Nev. 226 (Nev. 1991). This cause of action stands in contrast to one for breach of contract because of its requirement for literal compliance with the terms of the contract. *See Kennedy v. Carriage Cemetery Services, Inc.*, 727 F.Supp.2d 925, 931 (Nev. 2010).

The complaint alleges that detectives Keema and Warwick entered into a confidential informant agreement with Plaintiff when they interviewed him in his cell in July 2012, and as part of the agreement they agreed to keep Plaintiff's identity confidential. (Doc. # 1 at 19 ¶ 34.) He avers that they breached this agreement when they left the search warrant materials at the Villano residence in August 2012, which disclosed Plaintiff as the confidential informant. (*Id.* ¶ 35.) He alleges that NDI is the cause-in-fact and proximate cause of his injuries resulting from that breach. (*Id.* ¶¶ 36-37.)

The court finds that Plaintiff does state a colorable breach of contract claim against Keema, Warwick and DPS; however, Plaintiff must first properly serve DPS to proceed with his claim against it. The court agrees that Plaintiff may not maintain a breach of contract claim against the remaining defendants as they were not parties to the alleged confidential informant agreement. Therefore, the breach of contract claim should be dismissed with prejudice as to all defendants other than DPS, Keema and Warwick.

Plaintiff's allegations that DPS, Keema and Warwick breached the contract, however, are incongruent with a cause of action for breach of the implied covenant of good faith and fair dealing, and this claim should be dismissed with prejudice.

///

///

1          **3. Assault, Battery, IIED and Negligence Claims against Cortez and Paige**

2          Plaintiff's complaint does not explicitly state that he is asserting civil assault and battery

3 claims against Cortez and Paige. Nor does the complaint or Plaintiff's opposition make clear

4 whether Plaintiff seeks to assert claims for IIED or negligence against Cortez and Paige related

5 to these incidents.

6          To state an assault claim, a plaintiff must demonstrate that the defendant: (1) intended to

7 cause harmful or offensive physical contact and (2) the victim was put in apprehension of such

8 contact. *Sandoval v. Las Vegas Metro. Police Dep't.*, 854 F.Supp.2d 860, 882 (D. Nev. 2012)

9 (citation omitted), *reversed on other grounds by Sandoval v. Las Vegas Metro. Police Dep't*, 756

10 F.3d 1154 (9th Cir. 2014). To state a battery claim, a plaintiff must allege that the defendant: (1)

11 intended to cause harmful or offensive contact and (2) such contact occurred. *Burns v. Mayer,*

12 175 F.Supp.2d  1259, 1269 (D. Nev. 2001) (citation omitted). The elements of IIED and

13 negligence claims are set forth above.

14          The claims for assault, battery, IIED and negligence against Cortez related to the August

15 12, 2012 incident are barred by the two-year statute of limitations. Nev. Rev. Stat. 11.190(4)(c),

16 (e). Any amended complaint should clarify whether Plaintiff intends to include these State law

17 claims against Paige.

18 **D. Sixth Cause of Action-Conspiracy to Accomplish Cover-Up**

19          None of the parties specifically addresses Plaintiff's sixth cause of action titled

20 "Conspiracy to Accomplish Cover-Up." (Doc. #1 at 31-32.) Nevertheless, the court will screen

21 this cause of action under 28 U.S.C. § 1915A. In this cause of action, Plaintiff alleges that

22 Sergeant Stuehling called Plaintiff shortly after Paige shot him on January 2, 2013, in recognition

23 of the wrongs perpetrated by the defendants against Plaintiff. (Doc. # 1 at 31 ¶ 2.) He goes on to

24 allege that there was a conspiracy between Villano and Cortez to "do the injuries and cause the

25 losses complained of hereinabove by Corgan", which the court presumes refers to Cortez's

26 alleged assault of Plaintiff. (*Id.* ¶ 3.) Plaintiff then states: "The same relief should be granted

27 against Paige for his intentional infliction of personal injury against Corgan for which Paige has

28 been convicted..." (*Id.* ¶ 4.) Plaintiff also alleges that Pitts "and/or NDI," with a benefit to Elko

1    County and its commissioners, offered a house and money to Plaintiff to keep him quiet. (*Id.*

2    ¶ 5.)

3         To the extent Plaintiff seeks to include a federal claim for conspiracy to violate his

4    constitutional rights under section 1983, the elements are such a claim are: (1) an agreement or

5    meeting of the minds to violate constitutional rights, and (2) an actual deprivation of those rights

6    resulting from the alleged conspiracy. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *see*

7    *also Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). "To be liable, each participant in the

8    conspiracy need not know the exact details of the plan, but each participant must at least share

9    the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (internal quotation marks

10   and citation omitted).

11        This claim is predicated on Plaintiff stating a viable claim that his constitutional rights

12   under section 1983 were violated. He has been given leave to amend to try to do so, and in that

13   respect, should be given leave to amend to state a conspiracy claim.

14        Under Nevada law, "actionable civil conspiracy 'consists of a combination of two or

15   more persons who, by some concerted action, intend to accomplish an unlawful objective for the

16   purpose of harming another, and damage results from the acts or acts.'" *Consolidated Generator-*

17   *Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256, 114 Nev. 1304 (Nev. 1998)

18   (quoting *Hilton Hotels v. Butch Lewis Prod.*, 862 P.2d 1207, 1210, 109 Nev. 1043, 1048 (Nev.

19   1993)).

20        Insofar as Plaintiff alleges a conspiracy between Villano and Cortez to "do the injuries

21   and cause the losses complained of" such a claim is barred by the statute of limitations because

22   the injury inflicted by Cortez occurred on August 12, 2012. With respect to the State civil

23   conspiracy claim against Stuehling, it is not clear who Plaintiff alleges Stuehling conspired with

24   or what the specific unlawful objective sought to be accomplished was. Plaintiff's claim against

25   Pitts, DPS, Elko County  and its commissioners is similarly vague. It does not plausibly suggest

26   who entered into the conspiracy, what the asserted unlawful objective was, or the resulting

27   damage. The State law civil conspiracy claim against Stuehling, DPS (if properly served), Pitts,

28   Elko County, and the Elko County Commissioners should be dismissed with leave to amend.

1    **IV. RECOMMENDATION**

2       **IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING**

3    **IN PART AND DENYING IN PART** Defendants' motion to dismiss (Doc. # 8), as follows:

4       (1) Plaintiff's section 1983 failure to protect claim based on his alleged placement in a

5    cell with Cortez in August 2012, which he claims led to an assault and battery at the hands of

6    Cortez should be **DISMISSED WITH PREJUDICE** as barred by the statute of limitations;

7       (2) Plaintiff's section 1983 failure to protect claim based on Paige's alleged shooting of

8    Plaintiff on January 2, 2013, should be **DISMISSED WITH LEAVE TO AMEND**;

9       (3) Plaintiff's section 1983 failure to protect claim based on Plaintiff's alleged placement

10   in the same cell block as Paige should be **DISMISSED WITH LEAVE TO AMEND**;

11       (4) Plaintiff should be advised that if he chooses to amend his complaint with respect to

12   (2) and (3), *supra*, he must allege facts demonstrating that defendants knew of the risk of serious

13   harm, and disregarded that risk, because mere negligence is insufficient to support a civil rights

14   claim of deliberate indifference;

15       (5) To the extent Plaintiff asserts due process claims based on the alleged confidential

16   informant agreement, they should be **DISMISSED WITH PREJUDICE**;

17       (6) Plaintiff's State law claims for IIED, NIED and negligence should be **DISMISSED**

18   **WITH PREJUDICE** to the extent they are predicated on his August 12, 2012 placement in a

19   cell block with Cortez, as barred by the statute of limitations;

20       (7) Plaintiff's IIED claim based on his alleged placement in the same cell block with

21   Paige after Paige shot him in January 2013 should be **DISMISSED WITH LEAVE TO**

22   **AMEND**;

23       (8) Plaintiff's negligence claims related to his being shot by Paige and subsequent

24   placement in a cell block with Paige should be **DISMISSED WITH LEAVE TO AMEND**;

25       (9) Plaintiff's breach of contract claim may **PROCEED** against Keema, Warwick and

26   DPS; although DPS must be properly served before Plaintiff can maintain this claim against it;

27   the breach of contract claim should be **DISMISSED WITH PREJUDICE** as to all other

28   defendants;

1   (10) Plaintiff's claim for breach of the implied covenant of good faith and fair dealing

2   should be **<u>DISMISSED WITH PREJUDICE</u>**;

3   (11) **<u>DISMISSING WITH PREJUDICE</u>** State law claims for assault, battery, IIED and

4   negligence against Cortez as barred by the statute of limitations;

5   (12) Granting Plaintiff **<u>LEAVE TO AMEND</u>** to assert State law claims for assault,

6   battery, IIED and negligence against Paige;

7   (13) Plaintiff's federal conspiracy claim under section 1983 should be **<u>DISMISSED</u>**

8   **<u>WITH LEAVE TO AMEND</u>**;

9   (14) **<u>DISMISSING WITH PREJUDICE</u>** Plaintiff's State law civil conspiracy claim

10   against Villano and Cortez;

11   (15) Plaintiff's State law civil conspiracy claims against Stuehling, DPS (if properly

12   served), Pitts, Elko County, and the Elko County Commissioners should be **<u>DISMISSED WITH</u>**

13   **<u>LEAVE TO AMEND</u>**.

14   (16) Plaintiff should be given thirty days from the date of any order adopting this report

15   and recommendation (subject to any stay entered by the District Judge as discussed below) to file

16   an amended complaint correcting the deficiencies noted above. Plaintiff should be advised that

17   any amended complaint should be complete in and of itself without reference to the prior

18   complaint. Any allegations, parties or requests for relief from the original complaint that are not

19   carried forward in the amended complaint will no longer be before the court. Plaintiff shall

20   clearly title the amended complaint as such. Plaintiff should be further advised that the complaint

21   should clearly identify what claims are being asserted against each defendant and should include

22   factual allegations describing the alleged offending conduct on the part of each defendant.

23   Plaintiff should be cautioned that if he fails to file an amended complaint within the time period

24   prescribed by the District Judge, the case will proceed on the original complaint subject to the

25   items dismissed pursuant to this report and recommendation and any order adopting it;

26   (17) Should the District Judge adopt this recommendation, the time period to file an

27   amended complaint should be subject to the proposed stipulation to stay all proceedings (Doc.

28   # 39).

The parties should be aware of the following:

1.      Usually, a party has fourteen days to file specific written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules; however, in light of the filing of a stipulation to stay all proceedings in this matter related to Plaintiff's counsel's health concerns, the time period to file any objections to the report and recommendation is tolled pending disposition of the proposed stipulation for a stay of all proceedings and then subject to any stay entered by the District Judge. Any objection shall be filed within fourteen days of the entry of either an order denying the stipulation for a stay of all proceedings or an order lifting a stay.

2.      This report and recommendation is not an appealable order and any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

Dated: June 16, 2015.

William G. Cobb

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE